1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHLEEN STACH,

            Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

           Defendant.

Case No. 09-cv-0984-JPD

ORDER AFFIRMING COMMISSIONER

## I.      INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Kathleen Stach appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied her application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f,

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

the Commissioner's decision is AFFIRMED.

## II.      FACTS AND PROCEDURAL HISTORY

Plaintiff is a 48-year-old woman with a GED education.  Administrative Record

("AR") at 112, 124.  Her past work experience includes employment as a thrift store clerk and

a secretary.  AR at 119, 127.  Plaintiff was last gainfully employed in 1994.  AR at 113.

ORDER
PAGE - 1

Plaintiff asserts that she is disabled due to depression, anxiety, substance abuse in remission, obesity, degenerative disk disease, degenerative joint disease of the knees and a torn rotator cuff.  AR at 118; Dkt. No. 12 at 1.  She asserts a disability onset date of May 1, 2003. *Id.*

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 46, 52.  Plaintiff requested a hearing, which took place on June 4, 2007.  AR at 542.  On November 19, 2007, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 17-29.

After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review, AR at 9, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On July 14, 2009, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

III.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.    EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R.

§§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id*.  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

---

[1]    Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit.  20 C.F.R. § 404.1572.

ORDER
PAGE - 4

claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

VI.    DECISION BELOW

On November 19, 2007, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since January 21, 2005, the application date.

2.    The claimant has the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the knees, status post right carpal tunnel release, right shoulder rotator cuff tear, depression, anxiety, and substance abuse in reported remission.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work with additional limitations.  She can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about 6 hours, and sit for about 6 hours in an 8-hour workday with normal breaks.  She can frequently balance, occasionally stoop, kneel, crouch, crawl, climb ramp/stairs but never on ladders/scaffolds, and no reaching overhead.  There are no handling and fingering limitations.  The claimant has the mental capability to adequately perform the mental activities generally required by competitive remunerative, unskilled work as follows: understand, carry out and remember simple instructions compatible with unskilled work with an average ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence; make judgments commensurate with the functions of unskilled work (i.e., simple work-related decisions); respond appropriately to supervision, coworkers, and work situations; and deal with changes within a routine work setting without dealing with the general public.

5.    The claimant is unable to perform any past relevant work.

6.   The claimant was born on ███████, 1962[2] and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.   The claimant has at least a high school education and is able to communicate in English.

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.  The claimant has not been under a disability, as defined in the Social Security Act, since January 21, 2005, the date the application was filed.

AR at 19-29.

## VII.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Whether the ALJ erred in failing to consider Plaintiff's obesity.

2.   Whether the ALJ erred in his evaluation of the medical evidence.

3.   Whether the ALJ erred in his evaluation of Plaintiff's testimony.

4.   Whether the ALJ erred in his evaluation of the lay witness statements.

Dkt. Nos. 12 at 9-22; 13 at 6-18.

## VIII.   DISCUSSION

A.   <u>The ALJ Did Not Err by Not Considering Plaintiff's Obesity.</u>

Plaintiff asserts that the ALJ erred by failing to consider the impact of Plaintiff's obesity on her impairments of degenerative joint disease of the knees and a torn rotator cuff.

---

[2]   The actual date of birth is deleted in accordance with Western District of Washington Local Rule CR 5.2.

ORDER
PAGE - 6

1   However, Plaintiff points to no evidence in the record that her obesity, or her obesity in

2   combination with her degenerative joint disease of the knees and torn rotator cuff, causes her

3   additional functional limitations.  Plaintiff only makes reference to two doctors' notes that state

4   that Plaintiff should lose weight in response to a question concerning recommended treatment

5   to improve employability.  *See* AR at 340, 444.  However, there is no evidence of functional

6   limitations caused by Plaintiff's obesity.  The two doctors' notes merely state that Plaintiff

7   should lose weight.  Moreover, stating that losing weight will improve employability is not the

8   same as stating that Plaintiff has obesity-related functional limitations.  There is simply no

9   evidence in the record that would give the ALJ reason to consider the impact of Plaintiff's

10   obesity on her other impairments.

B.   The ALJ Did Not Err in His Evaluation of the Medical Evidence.

1.   *Standard of Review for Medical Evidence*

13   As a matter of law, more weight is given to a treating physician's opinion than to that

14   of a non-treating physician because a treating physician "is employed to cure and has a greater

15   opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

16   747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

17   physician's opinion, however, is not necessarily conclusive as to either a physical condition or

18   the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

19   *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

20   physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

21   contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

22   157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

23   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

24   making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

25   merely state his conclusions.  "He must set forth his own interpretations and explain why they,

26   rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

1    Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*,

2    157 F.3d at 725.

3           The opinions of examining physicians are to be given more weight than non-examining

4    physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the

5    uncontradicted opinions of examining physicians may not be rejected without clear and

6    convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

7    physician only by providing specific and legitimate reasons that are supported by the record.

8    *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

9           Opinions from non-examining medical sources are to be given less weight than treating

10   or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

11   opinions from such sources and may not simply ignore them.  In other words, an ALJ must

12   evaluate the opinion of a non-examining source and explain the weight given to it.  Social

13   Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

14   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

15   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

16   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

17   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

18              2.     *The ALJ's Treatment of Opinions of Lynn Staker, M.D.*

19          Lynn Staker, M.D., conducted a physical evaluation of Plaintiff on December 29, 2004.

20   AR at 249.  Dr. Staker diagnosed Plaintiff with degenerative disc disease of the cervical spine

21   and concluded that Plaintiff's overall work level was "severely limited."  *Id.*  Dr. Staker noted

22   that X-rays of Plaintiff's right shoulder were within normal limits, and that X-rays of the

23   cervical spine showed "marked narrowing and spur formation."  AR at 253.  Dr. Staker stated

24   that she believed Plaintiff has "significant degenerative disc of the cervical spine."  *Id.*  Dr.

25   Staker also opined that, "I don't think she'd be employable.  She would be at less than

26

sedentary level." *Id.*  Dr. Staker concluded that Plaintiff needed to have an MRI scan of the cervical spine, as well as EMG studies of the cervical spine and upper extremities.  *Id.*

Plaintiff subsequently obtained an MRI which indicated mild to moderate disc protrusions, minimal to mild compression, mild to moderate foraminal narrowing and some moderate disk degeneration.  AR at 317.  In addition, a subsequent EMG revealed "no evidence of a right ulnar neuropathy at the wrist or elbow," "no suspicion for a right brachial plexopathy or a generalized peripheral neuropathy" and "no convincing evidence of an acute or active right cervical radiculopathy."  AR at 349-50.

The ALJ accorded Dr. Staker's opinion no weight because he found that, in view of the other evidence in the record, it was based mostly on Plaintiff's "less than credible subjective complaints."  AR at 25.  The Court cannot conclude that the ALJ erred in his evaluation of the opinion of Dr. Staker to the extent it is inconsistent with his determination that Plaintiff can perform light work with additional limitations.  The objective findings from an EMG and an MRI performed subsequent to Dr. Staker's physical evaluation do not support her rather severe opinion that Plaintiff would only be employable at a "less than sedentary level."  AR at 317, 349-50.  Moreover, while Dr. Staker's X-rays of the cervical spine showed marked narrowing and spur formation, the X-rays of the right shoulder were within normal limits.  AR at 253.

In addition, Dr. Staker's opinion is contradicted by the evidence in the record concerning Plaintiff's level of daily activity, which includes: assuming a leadership role as vice chairperson at Narcotics Anonymous, AR at 495; serving on an activities committee for service work at Narcotics Anonymous, AR at 564; attending Narcotics Anonymous meetings several times a week, AR at 262, 460; attending group psychotherapy weekly, AR at 459; planning and attending Narcotics Anonymous social activities, AR at 567; selling soda pop at the Narcotics Anonymous social gatherings, AR at 567; considering applying to become the manager of her group home, AR at 564; caring for and bathing her ailing mother, AR at 136; sharing a house and chores with five other women, AR at 460; performing household chores such as laundry,

washing dishes, vacuuming and cooking meals, AR at 137, 461; running errands including grocery shopping on a daily basis, AR at 138, 461, 565; walking several miles a day, AR at 399; interacting socially with friends, AR at 461; having a boyfriend, AR at 460; pursuing hobbies such as crocheting and bead work, AR at 461; and taking public transportation such as a bus, AR at 259, 457.  In fact, Plaintiff's level of daily activity led her therapist to note on March 15, 2007 that Plaintiff "appeared to have a busy schedule," and Plaintiff did not disagree with this characterization at the administrative hearing.  AR at 485, 564.  Plaintiff's relatively active level of functioning is inconsistent with Dr. Staker's determination that Plaintiff's degenerative disc disease limits her to "less than sedentary" work.  Accordingly, Dr. Staker must have placed undue weight on Plaintiff's subjective complaints of pain, which lack credibility for the reasons described in Section VIII.C. below.

> ### 3.     The ALJ's Treatment of Opinions of Peter Littlewood, M.D.

Peter Littlewood, M.D., conducted a physical evaluation of Plaintiff on October 12, 2005, and diagnosed Plaintiff with degenerative joint disease of the knees and right rotator cuff syndrome.  AR at 339.  He indicated that the severity of the degenerative joint disease of the knees was moderate.  *Id.*  Dr. Littlewood opined that Plaintiff's knee and shoulder pain limited her to sedentary work.  AR at 339.

The ALJ accorded Dr. Littlewood's opinion no weight because he found that, in view of the evidence in the record, it was based mostly on Plaintiff's "less than credible subjective complaints."  AR at 25.  But it is unclear from Dr. Littlewood's report the extent to which he relied upon Plaintiff's subjective complaints, if at all, as his report seems to include only objective findings and does not document Plaintiff's subjective complaints.  Accordingly, the ALJ failed to give specific and legitimate reasons for rejecting Dr. Littlewood's opinions.  However, the error was harmless, as Dr. Littlewood's opinion that Plaintiff is limited to sedentary work is contradicted by other evidence in the record, most notably Plaintiff's level of daily activity, as described above.

1

4.     *The ALJ's Treatment of Opinions of Susan Laurel, D.O.*

2      Susan Laurel, D.O., is Plaintiff's treating physician, having treated Plaintiff on occasion

3    from April 30, 2004 to the present.  Dr. Laurel performed a physical evaluation of Plaintiff on

4    August 15, 2006 and diagnosed Plaintiff with degenerative joint disease of the knees and a torn

5    right rotator cuff.  AR at 443.  Dr. Laurel indicated that the severity of each was moderate.  *Id.*

6    Dr. Laurel noted that Plaintiff's shoulders had decreased range of motion and that her knees

7    had decreased flexion.  AR at 442.  Dr. Laurel opined that Plaintiff's overall work level was

8    sedentary.  AR at 443.  Her recommended treatment for Plaintiff was shoulder surgery and

9    weight loss.  AR at 444.

10     Dr. Laurel also saw Plaintiff on May 13, 2006, at which time Plaintiff told her that she

11   was walking several miles a day.  AR at 399.  Dr. Laurel's impression of Plaintiff included

12   back pain, chronic neck and shoulder pain and obesity.  *Id.*  Dr. Laurel's treatment plan for

13   Plaintiff included seeing a nutritionist, adding muscle toning exercises, and walking in water.

14   *Id.*  Dr. Laurel referred Plaintiff to physical therapy.  *Id.*

15     Dr. Laurel examined Plaintiff on October 13, 2004, and assessed Plaintiff with right

16   rotator cuff tendonitis, particularly biceps, with question of possible tear, and somatic

17   dysfunction cervical, thoracic, right upper extremity and ribs bilaterally secondary to number

18   one.  AR at 270.  Dr. Laurel indicated that Plaintiff admitted that "she has not been doing any

19   of the stretches or wall-walking we talked about."  *Id.*  Dr. Laurel's treatment plan included

20   referring Plaintiff to physical therapy and directing her to perform home exercises.  *Id.*

21     The ALJ accorded Dr. Laurel's opinions no weight because he found that, in view of

22   the evidence in the record, it was based mostly on Plaintiff's "less than credible subjective

23   complaints."  AR at 25.  The Court cannot conclude that the ALJ erred in his evaluation of the

24   opinion of Dr. Laurel, as the relevant medical report contains minimal objective findings and

25   must be based largely on Plaintiff's subjective complaints.  *See* AR at 441-44.  Moreover, the

26   objective findings from other reports from Dr. Laurel do not appear to support an overall work

level of sedentary.  To the extent that Dr. Laurel's objective findings could support a sedentary work level, they are contradicted by other evidence in the record, most notably Plaintiff's level of daily activity, including walking several miles a day, as Plaintiff reported to Dr. Laurel.  *See* AR at 399.

### 5.  The ALJ's Treatment of Opinions of Shawn Kenderline, Ph.D.

Shawn Kenderline, Ph.D., performed a psychological evaluation of Plaintiff on April 12, 2004.  AR at 319-22.  Dr. Kenderline diagnosed Plaintiff with amphetamine dependence in early full remission and major depressive disorder.  AR at 320.  Dr. Kenderline noted that Plaintiff has severe limitations in her ability to exercise judgment and make decisions, and that her judgment is impaired by years of substance abuse.  AR at 321.  Dr. Kenderline stated that Plaintiff is able to follow complex instructions, that her concentration is good, that her problem-solving is impulsive in nature, and that her abstract reasoning appears intact.  *Id.*  Dr. Kenderline opined that Plaintiff had marked limitations in her ability to interact appropriately with the public and in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting.  *Id.*  Dr. Kenderline stated that with continued abstinence from illicit drugs, Plaintiff's prognosis was fair.  AR at 322.

The ALJ gave Dr. Kenderline's opinions "little or no probative weight" because they are inconsistent with her actual daily activities and based on Plaintiff's "less than credible self-reports."  AR at 26.  The ALJ did not err in his evaluation of the opinion of Dr. Kenderline to the extent Dr. Kenderline's opinion is inconsistent with the ALJ's determination that Plaintiff can perform light, unskilled work with additional limitations and no contact with the general public.  Plaintiff's subjective complaints lack credibility, as discussed in Section VIII.C. below, and her level of daily activity suggests that she is capable of performing light, unskilled work with limitations and no contact with the public.  However, it is worth noting that Dr. Kenderline's opinions were relatively mild and are not necessarily inconsistent with the ALJ's determination that Plaintiff is not disabled.

6. *The ALJ's Treatment of Opinions of Cherie Valeithian, Ph.D.*

Cherie Valeithian, Ph.D., performed a psychological evaluation of Plaintiff on October 27, 2004.  AR at 243.  Dr. Valeithian diagnosed Plaintiff with major depression and PTSD. AR at 244.  Dr. Valeithian noted marked severity in the areas of depressed mood, social withdrawal, motor retardation and global illness.  *Id.*  Dr. Valeithian noted that Plaintiff's verbal expressions of anxiety or fear as severe.  *Id.*  Dr. Valeithian opined that Plaintiff had marked limitations in her ability to exercise judgment and interact with the public.  AR at 245. Dr. Valeithian also opined that Plaintiff had severe limitations in her ability to relate appropriately to coworkers and supervisors, and to respond appropriately to and tolerate the pressures and expectations of a normal work setting.  AR at 245.

The ALJ gave Dr. Valeithian's opinions "little or no probative weight" because they are inconsistent with her actual daily activities and based on Plaintiff's "less than credible self-reports."  AR at 26.  The ALJ did not err in his evaluation of the opinion of Dr. Valeithian to the extent her opinion is inconsistent with the ALJ's determination that Plaintiff can perform light, unskilled work with additional limitations and no contact with the public.  Plaintiff's subjective complaints lack credibility, and her level of daily functioning suggests that she is capable of performing light, unskilled work with limitations.

7. *The ALJ's Treatment of Opinions of Paul Michels, M.D.*

Paul Michels, M.D., performed a psychiatric evaluation of Plaintiff on December 27, 2006.  AR at 457.  Dr. Michels diagnosed Plaintiff with amphetamine and cocaine dependence, in reported full sustained remission, major depressive disorder, recurrent, in partial remission, mild, and panic disorder with agoraphobia, in partial remission.  Dr. Michels assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 60.[3]  Dr. Michels noted that with

---

[3]   The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score

treatment and narcotic abstinence "her depressive and anxiety symptoms have improved but have not resolved completely." AR at 461-62. Dr. Michels also opined: Plaintiff's focus and concentration appear fair; her pace and persistence seem fair; she has the intellectual capacity to understand, remember and follow complicated or simple instructions; she seems capable of interacting appropriately with others; and she has the capacity to manage her finances. AR at 462. Dr. Michels also noted that stress might cause transient worsening in her depressive and anxiety symptoms. *Id.*

Dr. Michels also conducted a psychiatric evaluation of Plaintiff on April 23, 2005. AR at 259. Somewhat tellingly, Plaintiff's chief complaint to Dr. Michels was "I've been a drug addict for 30 plus years." *Id.* Dr. Michels diagnosed Plaintiff with cocaine and amphetamine dependence in reported full sustained remission, depressive disorder not otherwise specified, and anxiety disorder not otherwise specified. AR at 263. He assessed Plaintiff with a GAF score of 50 to 55. *Id.* Dr. Michels noted that a more aggressive treatment regimen could potentially stabilize her symptoms, but that Plaintiff seems to have little motivation to pursue such treatment. AR at 264. Dr. Michels noted that Plaintiff was told by multiple mental health centers to place herself on a wait list for treatment but she did not do so. AR at 261. His prognosis for Plaintiff was guarded given her lack of motivation to seek treatment. AR at 264. Dr. Michels also opined: Plaintiff's focus and concentration seem mildly impaired; her pace and persistence seem moderately to severely impaired; she seems to have the intellectual capacity to understand, remember, and follow both complex and simple instructions; her depressive and anxiety symptoms would likely create occasional to frequent difficulties completing specific tasks in a timely or consistent matter; her interactions with others may be moderately impaired by her anxiety and depressive symptoms; stress would likely intensify these symptoms; and she is capable of managing her own funds. *Id.*

of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

The ALJ gave Dr. Michels' opinions "little or no probative weight" because they are inconsistent with her actual daily activities and based on Plaintiff's "less than credible self-reports." AR at 26. The ALJ did not err in his evaluation of the opinions of Dr. Michels to the extent his opinions are inconsistent with the ALJ's determination that Plaintiff can perform light, unskilled work with additional limitations and no contact with the general public. Plaintiff's subjective complaints lack credibility, and her level of daily functioning suggests that she is capable of performing light, unskilled work with limitations and without contact with the public. Moreover, Plaintiff's condition improved by her second psychiatric evaluation with Dr. Michels (as he noted), and, in fact, his second evaluation of Plaintiff is arguably not inconsistent with the ALJ's determination that Plaintiff is not disabled. At her second visit in late December 2006, Dr. Michels assessed Plaintiff with a GAF score of 60 and his findings were relatively mild.

> ### 8.   The ALJ's Treatment of Opinions of Deborah Kabish and Martina Warnke

Deborah Kabish, an Advanced Registered Nurse Practitioner, and counselor Martina Warnke saw Plaintiff on numerous occasions from August 2005 to June 2007. On October 5, 2005, they completed an evaluation of Plaintiff, and assessed Plaintiff with bipolar disorder, PTSD and panic disorder. AR at 334. They assessed Plaintiff with marked severity in the areas of depressed mood, verbal expression of anxiety or fear, and global illness. *Id.* They also stated that Plaintiff had marked limitations in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR at 335. They noted that medication seems to help decrease the frequency and severity of Plaintiff's symptoms. *Id.*

Ms. Kabish and Ms. Warnke also completed an evaluation of Plaintiff on August 25, 2006. AR at 513. They assessed Plaintiff with bipolar disorder and PTSD. AR at 514. In addition, they assessed Plaintiff with marked severity in the areas of depressed mood, verbal expression of anxiety or fear, social withdrawal, physical complaints and global illness. *Id.*

They stated that Plaintiff had marked limitations in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting.  AR at 515.  They also noted that Plaintiff's medications appear to have decreased the frequency and severity of her symptoms.  *Id.*  In addition, they stated that Plaintiff is engaged in treatment with regular attendance and active participation and that she follows through with homework and treatment recommendations.  AR at 516.  They further noted that Plaintiff has improvement in mood symptoms due to medication, and that she is "implementing good coping skills and working through trauma-issues."  *Id.*

The ALJ did not err when he gave little or no probative weight to the opinions of Ms. Kabish and Ms. Warnke.  The ALJ rejected their opinions because they were inconsistent with Plaintiff's daily activities and based on Plaintiff's less than credible self-reports.  AR at 26.  Because Ms. Kabish is a nurse and Ms. Warnke is a counselor, they are not creditable medical sources, and are instead considered "other sources."  When an ALJ determines what weight to accord "other sources," the ALJ generally should explain the weight given to "other sources," or at the very least, discuss the evidence from other sources so that a claimant or subsequent reviewer can follow the adjudicator's reasoning when such opinions may have an effect on the outcome of the case.  *See* SSR 06-03p, 2006 WL 2329939, at *6.  Here, the ALJ provided a sufficient explanation for rejecting the opinions of Ms. Kabish and Ms. Warnke to the extent they were inconsistent with a finding of no disability, and therefore, he did not err when he accorded their opinions little or no weight.

> 9.    *The ALJ's Treatment of Opinions of the Non-Examining Medical Consultant and Psychologist*

The ALJ concurred with the opinions of the state agency non-examining medical consultant and psychologist, based on his determination that their findings were consistent with the objective evidence and Plaintiff's activities of daily living.  AR at 24-25, 27.  On November 29, 2006, medical consultant Gary Gozart performed a Physical Residual

Functional Capacity Assessment of Plaintiff.  AR at 449-456.  Mr. Gozart concluded that Plaintiff had certain exertional, postural and manipulative limitations, and that she could perform light work with those limitations.  *Id.*  Mr. Gozart reviewed the record and noted that Plaintiff reported walking several miles a day, cooking, performing household chores and shopping.  AR at 456.  On January 10, 2007, John Robinson, Ph.D., performed a Psychiatric Review Technique of Plaintiff and determined that Plaintiff had major depressive disorder, panic disorder with agoraphobia, in partial remission, and amphetamine and cocaine dependence, in remission.  AR at 463-475.  Dr. Robinson opined that Plaintiff had only mild functional limitations, with the exception of moderate functional limitations in maintaining concentration, persistence or pace.  AR at 473.

C.       The ALJ Did Not Err in his Evaluation of Plaintiff's Testimony.

A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d at 1281; SSR 96-7p (1996).  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

ORDER
PAGE - 17

inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

Here, the ALJ provided several adequate reasons for discrediting Plaintiff's testimony about the severity of her symptoms.  First, the objective medical evidence and her level of daily activity do not support Plaintiff's testimony that, for example, she can only carry a gallon of milk a few feet and that she can only walk a block.  *See* AR at 25, 535-36.  Indeed, Plaintiff told Dr. Laurel on May 13, 2006 that she was walking several miles a day.  AR at 399. Moreover, as described above, Plaintiff level of daily activity -- which even led her therapist to comment on her "busy schedule" -- does not square with her asserted severe limitations.

Second, the ALJ correctly pointed out that Plaintiff has demonstrated a lack of motivation to pursue vocational training.  While Plaintiff testified that an outstanding student loan is preventing her from pursuing vocational rehabilitation, this reason obviously only applies to obtaining student loans for paid schooling.  Other avenues have been available to Plaintiff which she has not pursued.  For example, Plaintiff's therapist sent Plaintiff an invitation to a job fair (which she did not attend), AR at 491, 562, and her therapist referred Plaintiff to a vocational rehabilitation specialist who in turn gave Plaintiff a referral to the Division of Vocational Rehabilitation, AR at 494, 500.  It appears that Plaintiff has not followed through on these opportunities.  Plaintiff's failure to pursue vocational training through free or subsidized channels undermines her credibility.

Third, the ALJ noted that Plaintiff has shown a lack of motivation in pursuing treatment which could improve her condition.  For example, Dr. Michels made a point to note that a more aggressive treatment regimen could potentially stabilize her symptoms, but that Plaintiff seems to have little motivation to pursue such treatment.  AR at 264.  Dr. Michels observed that Plaintiff was told by multiple mental health centers to place herself on a wait list for

treatment but that she did not do so.  AR at 261.  Plaintiff also admitted to Dr. Laurel that she had not been doing the stretches and exercises that Dr. Laurel had recommended.  AR at 270. In addition, the ALJ noted that Plaintiff had received several "one-time" assessments from various mental health providers at the request of DSHS in order to qualify for state assistance, not as a part of a regular course of treatment sought by Plaintiff.

Moreover, there are several examples in the record where a health care provider has noted that Plaintiff's symptoms have abated in response to treatment.  *See* AR at 515-16, 461-62.  Indeed, Plaintiff acknowledged at the administrative hearing that her condition has improved with counseling and group therapy.  AR at 548.  Plaintiff's asserted severe limitations in view of documented medical improvement also undercuts her credibility.

Fourth, the ALJ noted that Plaintiff's testimony regarding an inability to be around other people is inconsistent with her level of daily activity, which includes, among other things, assuming a leadership role as vice chairperson at Narcotics Anonymous, AR at 495; serving on an activities committee for service work at Narcotics Anonymous, AR at 564; attending Narcotics Anonymous meetings several times a week, AR at 262, 460; attending group psychotherapy weekly, AR at 459; planning and attending Narcotics Anonymous social activities, AR at 567; selling soda pop at the Narcotics Anonymous social gatherings, AR at 567; and sharing a house and weekly chores with five other women, AR at 460.  Assuming a leadership role for an organization and serving on an activities committee are not consistent with Plaintiff's asserted severe anxiety when she is around other people.

Fifth, the ALJ pointed out that Plaintiff's two prior jobs ended for reasons unrelated to her medical impairments.  Plaintiff testified that her eight-year employment as a secretary ended because her boss retired and consequently the business closed.  AR at 547.  Plaintiff also testified that her subsequent employment as a thrift store clerk ended because she and her husband split up and she started caring for her father.  *Id.*  The fact that Plaintiff's prior employment ended for reasons wholly unrelated to disability, even though the jobs ended many

years ago, undermines her testimony about the severity of her symptoms.  Plaintiff testified

that she believes she cannot work, yet she has not lost a job because of her alleged disability

nor has she ever attempted to work since her alleged disability began.  In addition, when asked

why she did not get a job after she stopped taking care of her father, she testified, "Mental

health issues.  I became a drug addict and got in trouble and whatnot and things just didn't, my

mental health went downhill from there.  I have anxieties that I have trouble going out in

public."  AR at 548.  However, as noted above, Plaintiff has improved in response to mental

health treatment, she no longer uses illegal drugs, and her level of daily activity is inconsistent

with her asserted anxiety being out in public.  In sum, the ALJ did not err in his adverse

credibility assessment of Plaintiff.

> D.      The ALJ's Failure to Provide Specific Reasons for Rejecting the Lay Witness
>          Statements was Harmless Error.

Plaintiff contends that the ALJ erred by failing to give reasons for rejecting the lay

witness statements of Marie Garner, a friend, AR at 203-211, and Dennis Lommel, Plaintiff's

boyfriend, AR at 157-165.  If an ALJ wishes to discount the testimony of a lay witness, he

must provide reasons germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

1993).  An ALJ may reject lay witness statements if they are inconsistent with the medical

evidence or the record.  *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).

Here, the ALJ gave the lay witness statements some weight, but only to the extent that

they support the findings in the ALJ's decision.  AR at 23-24.  While the ALJ failed to give

specific reasons for rejecting the lay witness statements to the extent that they do *not* support

the findings in his decision, the error is harmless.  The statements, which corroborate much of

Plaintiff's own testimony, are inconsistent with Plaintiff's relatively active level of daily

functioning, so they were properly rejected in part.  *See Lewis*, 236 F.3d at 511-12.  Moreover,

the statement from Plaintiff's boyfriend is outdated because it is from March 2005 and

therefore predates Plaintiff's documented mental health improvement.  In sum, the ALJ

properly rejected in part the two lay witness statements and his failure to give specific reasons for doing so was harmless error.

IX.    CONCLUSION

The role of this Court is limited.  As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  While it may be possible to interpret the medical evidence as urged by Plaintiff, it is not the only rational interpretation.  Accordingly, the Commissioner's decision is AFFIRMED and this case is DISMISSED with prejudice.

DATED this 17th day of March, 2010.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

ORDER
PAGE - 21